THE CHELSEA SAVINGS BANK *vs.* WILLIAM A. SLATER.

Second Judicial District, Norwich, April Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The plaintiff bank promised the defendant not to call for payment of a demand note which it held against one *G*, for two years, in consideration of which the defendant agreed to pay the plaintiff three quarters of any deficiency arising upon a sale of the collateral pledged by *G* to secure such note.   *Held :—*

1. That whether the bank, in order to recover upon the defendant's guaranty, was bound to demand payment of the note at the end of the two years and sell the collateral within a reasonable time thereafter, or not, it certainly was bound to make such sale within a reasonable time after payment of the note had been demanded subsequent to the expiration of the two-year period.
2. That a delay in selling the collateral for more than two years after payment of the note had been demanded, was properly adjudged to be unreasonable by the trial court.
3. That upon the facts found such delay could not fairly be attributed to the defendant.

Argued April 26th—decided June 20th, 1905.

ACTION upon a contract of guaranty, brought to and tried by the Superior Court in New London County, *Gager, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff.   *No error.*

The following are the material facts of the case : On December 3d, 1891, Gardiner Greene of Norwich, to secure a previous indebtedness of that amount secured by collaterals, gave his note to the plaintiff for $49,000, payable on demand, with interest payable semi-annually in advance, secured by the same collaterals above referred to, together with an agreement, executed as a part thereof, that when, in the judgment of the bank, the market value of the described securities should be less than twenty per cent. in excess of the sum due on the note, additional securities would be deposited, and upon failure to do so the note would become payable, and upon failure to pay the same, or furnish such additional

security, the bank might sell the securities and apply the avails in payment of the note.

In pursuance of an oral agreement between Greene and the plaintiff, which was a part of the above transaction, the following instrument was executed by Greene, and by the plaintiff and defendant and one Charles S. Johnson, the defendant and Johnson signing the same for the accommodation of Greene: " This agreement made this ninth day of December, A. D. 1891, between the Chelsea Savings Bank of Norwich, Connecticut, of the first part, and Gardiner Greene of said Norwich, William A. Slater of said Norwich, and Charles S. Johnson, of Montville, Connecticut, parties of the second part, witnesseth that whereas said Gardiner Greene is the maker of a promissory note to said bank dated December 3, 1891, for $49,000, secured by capital stock of the following corporations and par values, to wit: Shetucket Company, $32,375 ; Falls Company, $38,600 ; Ashland Cotton Company, $20,000; Richmond Stove Company, preferred, $2,300 ; common, $2,700—now therefore said bank, in consideration of the several promises of said Slater and said Johnson hereinafter contained, agrees with each of the parties of the second part not to call for payment of any part of the principal of said note for two years from the date hereof, provided the interest on said note shall be paid when due, or within three months thereafter, and the value of the corporate stocks pledged to secure said note shall not become essentially impaired by the failure of either corporation, or otherwise, and the financial condition of said Slater and said Johnson shall not become essentially impaired.

"Said Bank further agrees that no sale of said securities shall at any time be made without reasonable notice to all the parties of the second part, and giving each of them an opportunity to buy the same. And said William A. Slater, in consideration of said promises of said bank, agrees with said bank that if, upon the sale of said securities after such notice there shall be a deficiency of proceeds of such sale or sales to pay said note, he will upon demand pay three-quarters of such deficiency, provided that his liability under this

agreement shall not in any event exceed nine thousand one hundred and eighty-seven dollars and fifty cents. And said Charles S. Johnson in consideration of said promises of said bank agrees with said bank that if upon the sale of said securities after such notice there shall be a deficiency of proceeds of such sale or sales to pay said note, he will upon demand pay one-quarter of such deficiency, provided that his liability under this agreement shall not in any event exceed three thousand and sixty-two dollars and fifty cents."

During the two years following the date of said agreement there was no impairment of the value of said securities so pledged, nor of the financial condition of the defendant or said Johnson; no default in the payment of interest occurred, nor was any demand made for the payment of the note.

After December 9th, 1893, the plaintiff made frequent demands upon Greene to pay the note and upon the defendant to adjust the debt. After December 9th, 1893, Greene had substantially no property beside his equitable interest in said securities. He paid the interest on said note in advance to July 1st, 1894. He died October 30th, 1895.

The following correspondence was had between plaintiff and defendant:—

*Plaintiff to Defendant*, October 4th, 1894.

" Mr. Gardiner Greene, Jr., tells me that he has communicated with you regarding the loan of his father, Gardiner Greene, held by this Bank, secured by several manufacturing stocks and partially guaranteed by you.

" This loan now stands at 48,540—with interest overdue since July 1st, 1894, and is secured by the following stocks as collateral." (Enumerating them.)

" You by agreement dated Dec. 9, 1891, guaranteed to make good three-quarters of any deficiency which shall occur in the sale of the securities, not exceeding $9,187.50, and the Bank agrees that no sale shall be made without

reasonable notice to all the parties in interest and giving to each the opportunity to buy the securities.

" As you are aware, none of the stocks except the Richmond are at present paying dividends, and Mr. Greene is unable to keep up the interest on the note and some action becomes imperative to protect the interest of the bank. It certainly seems as if the present was a poor time to force a sale of these stocks, and if any arrangements could be made to keep up the interest on the note, or in any way satisfactorily protect us, the bank would be willing to wait for a more favorable opportunity to realize on the collateral.

" I write, in accordance with our agreement, to formally notify you that we must sell the stocks, and offer you the opportunity to purchase the same unless some other arrangement can be made.

"·I· shall be very glad to receive any suggestions from you, either as to a continuation of the loan, or your purchase of the stocks or our sale of them if that should become necessary, and remain."

*Defendant to Plaintiff,* October 6th, 1894.

" Yours is duly received in regard to the Greene matter and contents carefully noted.

" I do not wish to buy any of the securities. It seems to me that all securities, especially manufacturing stocks, are going to improve in market value and that this is a very bad time to sell. What I wish you could feel like doing is to add the unpaid interest to the principal of the note for the present and wait until better times—which I am sure are coming—before selling the securities to liquidate the debt."

*Plaintiff to Defendant,* October 10th, 1894.

"·Your favor of the 6th inst. regarding the Gardiner Greene loan was received in my absence.

" Our position, in regard to this loan and the guarantee thereof, is, that we ought not, in justice to the guarantors

or ourselves, to allow the amount due on the loan to increase, and inasmuch as the collaterals do not furnish income to meet the accruing interest, we should take steps to realize on them as speedily as possible, applying the proceeds on the note.

"If, however, those who have guaranteed the note are willing to still further guarantee the increased indebtedness incurred by allowing the interest to accumulate, we should be entirely willing to let the loan stand as it is for the present, awaiting the improvement in manufacturing stocks which we hope ere long to see.

"In the meantime the little dividend from the Richmond Stove Co.'s stock we can collect and apply on the account.

"May I trouble to advise me further in the matter and oblige."

*Defendant to Plaintiff,* October 13th, 1894.

"Your letter of the 10th has been received. I am not willing to pay the interest or to guarantee the interest on the ·Greene loan and if your decision as given in your letter is final, I can see nothing to do but sell the collateral."

After such correspondence the defendant had several conversations with plaintiff's treasurer in which the defendant said, in effect, that he hoped the bank would take no speedy action, that he believed the stocks would increase in value, that it would be a mistake to sell them, and a hardship to Mr. Greene, and that they would come out better all around if the plaintiff held it. The defendant knew of the delay of the plaintiff in the sale of the stocks and never requested the plaintiff to collect of Greene or to sell the stock, except as above stated.

November 15th, 1897, plaintiff's treasurer wrote the defendant's attorney as follows :——

"Referring to the note of Gardiner Greene secured by certain manufacturing stocks as collateral, with which we hold a conditional guarantee of Wm. A. Slater and Charles S. Johnson, I would say.

" Some considerable time since we tendered to the guarantors, as provided in the agreement, the option of purchasing the collateral held for the note, but this option was declined by both the guarantors, and we were advised to take such action as seemed necessary to protect ourselves. Owing to inability to obtain what seemed to us a fair price for the stocks, and with the hope that business prospects would improve, we did not avail ourselves of the right to sell the securities and have held the loan until the present time hoping for an opportunity to sell to better advantage. Interest however has been accumulating so fast and has reached so large a figure and the prospect of improvement seems so poor that our board have to-day voted to sell the stocks, either at private or public sale at an early day unless the guarantors prefer to take them as provided by the agreement.

" I therefore write you now to again tender you this privilege, advising you that if you do not we shall proceed to sell the stocks as speedily as possible. If we cannot obtain what seems to be a fair offer at private sale we shall, after public notice, sell at auction, in which case we shall give you due notice of the sale.

" I shall be glad to hear if you have any suggestion to make on the matter. We gave you some time since a copy of the guarantee and I presume you are familiar with the case.

" The balance of principal due on the note is $48,540— and there is interest accrued of about $5,300—making a total due of about $53,840—The securities held with this loan are," (enumerating them).

The defendant was duly notified of the day of the sale of the stocks, which took place December 15th, 1897, and afterwards of the result of it, showing a deficiency of the proceeds of the sale, to pay the sum due on the note, of $17,384.63, payment of $9,187.50 of which was demanded of the defendant, no part of which has been paid. The stocks were bought in at the sale for the plaintiff.

Upon these facts the trial court held that the obligation

of the defendant in question was a guaranty for two years, with a reasonable time thereafter in which to sell the collateral, and found that the plaintiff had failed to sell the collateral within a reasonable time after the two-year period, or within a reasonable time after October 13th, 1894, and that by the letter of October 13th, 1894, the defendant definitely determined any indulgence given as to the time of sale of the collateral, and overruled the plaintiff's claim that the defendant waived his right to have the stocks sold within a reasonable time after the expiration of said period of two years and was estopped from claiming that they were not sold within a reasonable time.

*Wallace S. Allis*, for the appellant (plaintiff).

*Henry Stoddard* and *Frank T. Brown*, for the appellee (defendant).

HALL, J. Strong support may be found in the language of the written instrument in question, of the claim of the defendant and of the ruling of the trial court thereon, that the undertaking of the defendant was a contract of guaranty for the term of two years only, upon which he could be held liable only upon an impairment of the value of the collaterals during that period and a sale of the securities either during that period or within a reasonable time thereafter. We are, however, not required to determine whether such is the correct construction of the agreement, inasmuch as it seems clear to us that the limit of the guaranty was either the expiration of the two-year period, after which the plaintiff had an absolute right to demand payment of the note irrespective of the value of the securities, or was the time thereafter when it in fact demanded such payment; and that whichever of said periods was the limit of the contract of guaranty, the plaintiff, in order to hold the defendant upon his agreement, was required to sell the collateral within a reasonable time after demanding payment of the note; and that upon

the facts found the plaintiff's case must fail, whichever of said constructions is adopted.

A construction of the agreement which would permit the plaintiff, after interest had ceased to be paid upon the note, after payment of the note had · been demanded, and even after the death of the maker of the note, to sell the collaterals at such time as its officers might choose, without regard to whether the sale was made within a reasonable time after such events, would be an unreasonable one, and contrary to the language of the contract showing that it was the understanding of the parties that the bank desired protection, at the farthest, only until such reasonable time after demanding payment of the note as would enable it to sell the securities.

Assuming, then, that the two-year period was not the limit of the contract of guaranty, the plaintiff, in order to hold the defendant for any deficiency of the avails of the sale of the securities to pay the note, caused by the depreciated value of the securities at the time payment of the note was demanded, was required to sell them, giving the defendant an opportunity to buy them at the sale, within a reasonable time after the demand of payment; such demand, it is found, was frequently made after the expiration of the two-year period following December 9th, 1891 (within which no demand was to be made), and apparently in 1894; and all such demands must have been made prior to October 30th, 1895, the date of Mr. Greene's death.

The court has found that the sale of December 15th, 1897, was not made within a reasonable time after the letter of October 13th, 1894, and we see no reason for questioning the correctness of the conclusion that a delay in selling the securities, for more than two years after payment of the note was demanded, was unreasonable, unless it can fairly be said to appear from the record that such delay was induced, as the plaintiff claims, by the acts of the defendant.

The acts relied on as showing that the delay was reasonable are the correspondence and conversations between the

defendant and the plaintiff's treasurer. Regarding them, the court has found that such indulgence as the defendant may have before granted, as to the time of selling the securities, was terminated by the defendant's letter of October 13th, 1894, closing with the statement that he could see nothing to do but sell the collateral; and has further found, in effect, that the defendant did not waive his right to an earlier sale of the securities. The trial court's interpretation of the correspondence and acts of the parties is warranted by the facts, and is fully sustained by the letter of November 15th, 1897, from the plaintiff's treasurer to the defendant's attorney, which contains no suggestion that the sale was so delayed at the instance of the defendant. On the contrary, the letter says, in substance, that such delay was for the purpose of obtaining a better price, after the plaintiff had been advised to take such action as seemed to it necessary to protect itself.

The value of the securities did not diminish during the two-year period. Whether they had depreciated in value at the time of the demand of payment is not found. However that fact may have been, the defendant cannot be held liable, since the sale was not made within a reasonable time after the demand.

There is no error.

In this opinion the other judges concurred.